**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: September 23 2011**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 10-31614 |
| | ) | |
| Christiane Perkins, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | JUDGE MARY ANN WHIPPLE |

**MEMORANDUM OF DECISION
REGARDING OBJECTION TO EXEMPTION**

This matter is before the court on the Chapter 7 Trustee's objection to Debtor's claimed exemption in $3,600.00 garnished from her savings account prepetition ("Objection"). [Doc. # 39]. The court held a hearing on June 7, 2011, at which the Trustee and Debtor's attorney appeared in person. The $3,600.00 is currently in the Trustee's possession. Prior to this hearing, the court held an evidentiary hearing on a motion filed by Debtor asking the court to order the Trustee to turn over to her the $3,600.00, arguing that the funds are exempt student loan funds. That motion was denied as Debtor had not at that time listed her interest in the funds as exempt on bankruptcy Schedule C. However, the court granted Debtor leave to file an amended Schedule C. In her amended Schedule C, Debtor claims the $3,600.00 as exempt under Ohio Revised Code §§ 3334.09, 3334.15 and 2329.66(A)(16), and under 20 U.S.C. § 1095a. At the hearing on the Trustee's Objection, the parties agreed that the court should rely upon the prior evidentiary record.

The district court has jurisdiction over this Chapter 7 case pursuant to 28 U.S.C. § 1334(a) as a case

under Title 11. It has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 84-1 of the United States District Court for the Northern District of Ohio. A proceeding regarding exemptions from property of the estate is a core proceeding that the court may hear and decide. 28 U.S.C. § 157(b)(1) and (b)(2)(B). For the reasons that follow, the Trustee's Objection will be overruled.

## FACTUAL BACKGROUND

Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code on March 16, 2010. At issue in this case is the status of $3,600.00 garnished from Debtor's savings account on February 10, 2010. Those funds were then deposited in an escrow account held by the Toledo Municipal Court. Debtor notified the Toledo Municipal Court of the filing of her petition, and the court then sent the funds to the Chapter 7 Trustee.

Before the garnishment, Debtor's savings account summaries, [Debtor's Exs. A & B], show the following transactions: The balance in the account on December 30, 2009, was $9.44. On December 31, 2009, ProMedica Health deposited $1,770.03 in the account, which constituted wages earned by Debtor. On that date, Debtor transferred $1,770.00 to her checking account, leaving a balance of $9.47. On January 12, 2010, Debtor received student loan proceeds in the amount of $1,984.06 by way of a direct deposit by the University of Toledo into the savings account. Thereafter, two withdrawals were made, leaving a balance of $1,800.00 on January 14, 2010.

On January 15, 2010, two deposits were made. The first listed on the account summary is a direct deposit of student loan proceeds by the University of Toledo in the amount of $1,086.22. The second deposit listed on that date is a deposit by ProMedica Health of Debtor's wages in the amount of $1,508.33. On January 27, 2010, interest in the total amount of $.60 was credited to the account and on January 29, 2010, another direct deposit of Debtor's wages was made by ProMedica Health in the amount of $1,706.26. Between January 15 and February 10, 2010, Debtor withdrew a total of $2,015.61, leaving a balance of $3,600.00, which was then garnished on February 10. Between those dates and before garnishment of the account, the lowest balance in Debtor's savings account at any given time was $3,310.00.

Debtor testified that the direct deposits made by the University of Toledo represent both subsidized and unsubsidized student loan proceeds received through the Federal Direct Loan program. At the time the deposits were made, Debtor was a student at the University of Toledo. Debtor testified that she did not use any of the money withdrawn for school related purposes – i.e. books, room and board, lab fees, tuition. The

2

Trustee presented no evidence to the contrary.

## LAW AND ANALYSIS

As authorized by 11 U.S.C. § 522(b)(2), the Ohio legislature opted out of the federal exemptions provided in § 522(d). *See* Ohio Rev. Code § 2329.662. As a result, debtors for whom the applicable exemption law under § 522(b)(3)(A) is Ohio law are limited to the exemptions set forth in § 522(b)(3), which includes exemptions under the relevant Ohio statutes and under applicable non-bankruptcy federal law. Ohio exemption law applies to Debtor as she has been domiciled in this state for more than the 730 days preceding the date of the filing of their petition. *See* 11 U.S.C. § 522(b)(3)(A); Doc. # 1, p. 32, SOFA question 15.

Under Bankruptcy Rule 4003(c), the party objecting to the exemption, in this case the Trustee, has the burden of establishing that the debtor is not entitled to the claimed exemption. *In re Andrews*, 301 B.R. 211, 213 (Bankr. N.D. Ohio 2003). In making this determination, and in order to further the fresh-start policy of the Bankruptcy Code, exemption statutes are to be liberally construed in a debtor's favor. *Id.*

Debtor asserts that the $3,600.00 at issue in this case constitute student loan funds that are exempt under Ohio Revised Code §§ 3334.09, 3334.15 and 2329.66(A)(16) and under 20 U.S.C. § 1095a. The court initially notes, however, that the statutes cited by Debtor as providing an exemption under the Ohio Revised Code apply only to the right of a person to a tuition unit or payment under Ohio Revised Code § 3334.09, which, in turn, deals with Ohio Tuition Trust Authority tuition payment contracts with persons for the purchase of tuition units. *See* Ohio Rev. Code § 3334.15 (providing that "[t]he right of a person to a tuition unit or a payment under section 3334.09 . . . shall not be subject to execution, garnishment, attachment, the operation of bankruptcy or the insolvency laws, or other process of law"); Ohio Rev. Code § 2329.66(A)(16) (providing an exemption in "[t]he person's interest in a tuition unit or a payment under section 3334.09 of the Revised Code pursuant to a tuition payment contract, as exempted by section 3334.15 of the Revised Code"). According to Debtor, the funds in which she claims an exemption are student loan funds received under the Federal Direct Loan program and not tuition units or payments to which she was entitled under Ohio Revised Code § 3334.09. The Ohio exemption statutes do not apply to the funds at issue in this case.

Debtor also claims an exemption under 20 U.S.C. § 1095a, which provides as follows:

(d) No attachment of student assistance

Except as authorized in this section, notwithstanding any other provision of Federal or State law, no grant, loan, or work assistance awarded under this subchapter and part C of subchapter I of chapter 34 of Title 42, or property traceable to such assistance, shall be

3

> subject to garnishment or attachment in order to satisfy any debt owed by the student awarded such assistance, other than a debt owed to the Secretary and arising under this subchapter and part C of subchapter I of chapter 34 of Title 42.

The William D. Ford Federal Direct Loan Program is included in the types of student assistance that are exempt under § 1095a(d). *See* 20 U.S.C. §§ 1087a through 1087j. The Trustee does not dispute that the two direct deposits made by the University of Toledo on January 12 and 15, 2010, were student loan funds obtained under this program.

The Trustee nevertheless objects to Debtor's claim of exemption. He argues that under a first-in, first-out method of accounting to trace the source of commingled funds in an account, the student loan proceeds were reduced to $385.44 as of the date of the garnishment of Debtor's savings account. In support of his use of the first-in, first-out method of accounting, the Trustee relies on this court's decision in *In re Patterson*, No. 10-31791, 2010 WL 3606893, 2010 Bankr. LEXIS 2899 (Bankr. N.D. Ohio Sept. 10, 2010).

In that case, the debtors' federal income tax refund of $4,905.00, which included an Earned Income Credit and Additional Child Tax Credit in the total amount of $4,899.00, was deposited into their checking account. At the time of the deposit, the balance in the account was $362.23. No additional deposits were made to the account before the debtors filed their petition. However, withdrawals were made, leaving a balance of $3,755.10 on the date of filing. Under Ohio exemption law, debtors are entitled to an exemption in payments resulting from the Earned Income Credit and Additional Child Tax Credit. The court rejected the Trustee's argument that the tax refund lost its exempt status when it was deposited in the debtors' bank account, commingled with funds from other sources and spent, in part, as cash. The Trustee had presented no argument regarding an appropriate accounting method for tracing the exempt funds. Nevertheless, citing *United States v. Griffith*, 584 F.3d 1004, 1021 (10th Cir.2009), for the proposition that exempt funds retain their exempt character as long as they are readily traceable using "a standard accounting method, such as first-in, first-out tracing" and *In re Lichtenberger*, 337 B.R. 322, 326 (Bankr. C.D. Ill. 2006), wherein the court, "guided by the principle that exemptions are to be construed liberally in favor of debtors," applied the first-in, first-out method to determine the source of commingled funds, this court found use of the first-in, first-out method of accounting appropriate to trace the source of funds in the debtors' account.

Debtor counters that the more appropriate method for tracing funds in the account in this case is the lowest intermediate balance method under which $2,886.22 of the $3,600.00 at issue is traceable to the student loan funds. Under this method, the traced funds are assumed to be the last funds withdrawn from the account. If the account balance falls below the amount of funds subject to exemption, the debtor is

4

allowed only the lowest intermediate balance between the time of commingling and the time the status of the funds are determined. *First Fed. of Michigan v. Barrow*, 878 F.2d 912, 916 (6th Cir. 1989) (citing 4 L. King, *Collier on Bankruptcy* ¶ 541.13 (15th ed. 1988) and explaining the use of the lowest intermediate balance approach where trust funds are commingled in an account with other funds).

Although this court has applied the first-in, first-out method in cases in the past, no one method of tracing is appropriate in every case. As one court explained, "[m]ethods of tracing commingled funds are 'an equitable substitute for the impossibility of specific identifications' and therefore a court must 'exercise case-specific judgment to select the method best suited to achieve a fair and equitable result on the facts before them.'" *In re Lantz*, 451 B.R. 843, 847-48 (Bankr. N.D. Ill. 2011) (quoting *United States v. Henshaw*, 388 F.3d 738, 741 (10th Cir. 2004)). Courts applying the first-in, first-out method of tracing and courts applying the lowest intermediate balance method have both stressed that the method chosen by them is not an absolute and will not be applied where it produces an unjust result. *See, e.g., In re Lichtenberger*, 337 B.R. at 325-26 (noting the first-in, first-out method "is one of the rules of law which determines the ordinary application of voluntary payments or withdrawals when . . . the circumstances of the case do not require a different application"); *In re Lantz* 451 B.R. at 848 (stating that the "lowest intermediate balance rule is an equitable fiction that should not be employed where equity does not warrant the result").

This court agrees that a determination of the appropriate method of tracing commingled funds must be case-specific. Factors considered by courts include the policy underlying the exemption, and the general rule that exemption statutes are to be construed in favor of debtors. *Id.*; *cf. Kupetz v. United States (In re California Trade Tech. Schools, Inc.)*, 923 F.2d 641, 649-50 (9th Cir. 1991) (finding the first-in, first-out method more appropriate in tracing last minute prepetition transfers subject to avoidance as preferential transfers since that method makes it more difficult for a debtor to dissipate funds owed to his creditors by commingling those funds with other money). Applying these factors where debtors commingled proceeds from the sale of their home with other money in an account, the court in *In re Lantz* considered the purpose of the homestead exemption, which was to provide the debtor with the means to acquire shelter, either a long-term homestead or temporary housing for up to a year while searching for a permanent homestead. *In re Lantz*, 451 B.R. at 849. The court found the tracing method most consistent with that purpose was the lowest intermediate balance method, which assumed the proceeds were the last to be withdrawn from the account and was the method that was most beneficial to the debtor. *Id.*

Clearly, the purpose of the federal exemption in student loan proceeds that is at issue in this case is

to protect the debtor's ability to pay for education-related expenses from creditors. Where, as in this case, there is no evidence that the debtor has paid for such expenses after receiving student loan proceeds, the court finds that the lowest intermediate balance method of tracing should be applied in determining the status of commingled funds in an account. As in *In re Lantz*, the court finds this method most consistent with the purpose of the exemption. Applying this method assumes that the deposits consisting of Debtor's wages, which were made after the deposits of student loan proceeds, were used by Debtor for the non-education related purposes. Because of the timing of the deposits, applying the first-in, first-out method, would require an opposite assumption – that the student loan proceeds were used for the non-education related purposes.

The narrow purpose of the exemption in student loan proceeds is one fact that distinguishes this case from *In re Patterson* relied upon by the Trustee. Also, in *In re Patterson*, there were no funds deposited after the deposit of the tax refund at issue in that case. Thus, there was no need to apply the lowest intermediate balance method – both methods would provide the same result. *See In re Sissom*, 366 B.R. 677, 689-90, n.20 (Bankr. S.D. Tex. 2007) (finding that the lowest intermediate balance method did not apply where the debtor did not deposit any other monies besides the two amounts being traced).

The court finds, and the Trustee does not dispute, that the traceable student loan proceeds in Debtor's savings account under the lowest intermediate balance method amount to $2,886.22. The lowest balance in the account after the January 12, 2010, student loan deposit of $1,984.06 and before any further deposits was $1,800.00. Thus, $184.06 of the January 12 student loan deposit had been withdrawn from the account, leaving a balance of only $1,800.00. On January 15, 2010, a second student loan deposit was made in the amount of $1,086.22. Thus, on that date, Debtor's account included a total of $2,886.22 in student loans proceeds. Her savings account balance never fell below that amount before it was garnished on February 10, 2010. Because $2,886.22 of the $3,600.00 in garnished funds can be traced to student loan proceeds exempt under § 1095a(d), the Trustee's objection will be sustained only as to the non-exempt funds in the account, or $713.78, and will be overruled as to the $2,886.22 of exempt student loan proceeds.

The court will enter a separate order in accordance with this memorandum of decision.